1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| STEVEN GNASSI, | CASE NO. 3:20-cv-06095-JHC |
|---|---|
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION TO PROVISIONALLY SEAL |
| v. | |
| CARLOS DEL TORO, Secretary of the Navy, | |
| Defendant. | |

## I.

### INTRODUCTION

This matter comes before the Court on Defendant Carlos del Toro's Motion for Partial Summary Judgment, Dkt. # 20, and Plaintiff Steven Gnassi's Motion to Provisionally Seal, Dkt. # 42. Plaintiff brings age discrimination claims against Defendant. Defendant moves for partial summary judgment, saying that no evidence shows that decisionmakers with respect to the employment at issue knew Plaintiff's age.

The Court has considered the materials filed in support of, and in opposition to, each party's motion, and the case file. Being fully advised, the Court GRANTS both motions.

## II.

### BACKGROUND

Plaintiff is a retired Captain and uniformed officer of the United States Department of the Navy. Dkt. # 45, ¶2. In 2016, Plaintiff started working as a civilian employee of the Navy at the Puget Sound Naval Shipyard and Intermediate Maintenance Facility ("Shipyard") in Bremerton, Washington. *Id.*, ¶4. The Shipyard offers a four-year Apprentice Program, including on-the-job skills training and college coursework, to train its trades-focused employees. Dkt. # 22, ¶4. Plaintiff applied to the Apprentice Program in 2017, 2018, and 2019, Dkt. # 45, ¶6, seeking apprenticeship positions hosted by different "shops,"[1] the Shipyard's trades-focused work groups, such as welders and shipfitters, Dkt. # 22, ¶3. The Shipyard offers job fairs for candidates interested in the Apprentice Program. Dkt. # 21-1, at 14. While Plaintiff attended certain job fairs for the Apprentice Program in 2017 and 2018, he did not attend any in 2019. *Id.* at 13.

In 2019, Plaintiff applied for ten apprenticeship positions; the Shipyard denied each application. Dkt. # 45, ¶¶8, 16. At the time, Plaintiff was around 65 years old. Dkt. # 45, ¶3.

A.      Application Submission

In 2019, the Shipyard accepted applications for its Apprentice Program via USAJobs.gov, an online application portal for federal government employment. Dkt. # 22, ¶5. USAJobs.gov required Apprentice Program applicants to submit their résumé and standardized test scores.[2] *Id.*, ¶¶8, 10; Dkt. # 45, ¶10.

---

[1]     The Shipyard's workforce is divided into "codes," with certain codes having subcategories of trades-focused "shops." Dkt. # 22, ¶¶3–5. For clarity, the Court refers to both as "shops," unless otherwise specified.

[2]     Applicants could submit scores from either the "Next Generation" or "ACCUPLACER" standardized tests. Dkt. # 22, ¶8. Because Plaintiff took the "Next Generation" test, the Court's consideration of standardized tests concerns that test.

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION TO PROVISIONALLY SEAL - 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Plaintiff submitted applications for the ten apprenticeship positions via USAJobs.gov, including his résumé and test scores. Dkt. # 45, ¶¶10, 13. Each section of the test has 300 available points. *See* Dkt. # 22-1. Plaintiff scored 284 for reading, 271 for writing, and 300 for math. Dkt. # 45, ¶13.

For the 2019 Apprentice Program, Production Resource Manager Lisa Ames served as a "hiring official," tasked with identifying qualified candidates for the shops to select for interviews. Dkt. # 22, ¶¶ 1, 5–6. Ames neither determined who received interviews nor conducted interviews. *Id.*, ¶6. After the application period closed, the U.S. Pacific Fleet Office of Civilian Resources ("OCHR") provided Ames a "Certificate of Eligibles," a list of candidates OCHR determined were eligible. *Id.*, ¶¶ 10a. Neither the Certificate of Eligibles nor the standardized test scores identified applicants' ages or dates of birth. *Id.*, ¶¶10a–b.

Next, Ames developed an Excel spreadsheet containing tabs for "Qualified" and "Unqualified" candidates. *Id.*, ¶10d. If an applicant was a current Shipyard employee, appeared on the Certificate of Eligibles, and exceeded minimum qualifying scores for their standardized tests, the applicant was placed in the "Qualified" tab. *Id.*, ¶¶10c–d. Both tabs did not identify an applicant's age. *Id.*; *see* Dkt. # 22-1. Ames stated that she was unaware of an applicant's, or Plaintiff's, age while assembling the spreadsheet because this information was never provided to her. Dkt. # 22, ¶12. While Ames had access to applicants' résumés submitted via USAJobs.gov, she did not forward résumés to the shops along with the spreadsheet.[3] *Id.*, ¶10e. Plaintiff was listed as "Qualified" in the spreadsheet. *Id.*, ¶14.

---

[3]     Individual shop leaders could request candidate résumés from Ames. Neal Schroeder, the Shop 31 leader, reviewed résumés to see if applicants had a maintenance-oriented background, evidenced by an electrician license or other experience. Dkt. # 24, ¶4.

B.    Interview Selection

After receiving the spreadsheet from Ames, shop decisionmakers used it to select eligible applicants to interview.  *See, e.g.*, Dkt. # 24, ¶3; Dkt. # 25, ¶3; Dkt. # 26; ¶3; Dkt. # 34, ¶4.  Shop decisionmakers stated that in deciding to interview other applicants over Plaintiff, they never knew Plaintiff's age.  Dkt. # 24, ¶¶6; Dkt. # 25, ¶¶ 5, 7–9; Dkt. # 26, ¶¶6–7; Dkt. # 27, ¶¶9–10; Dkt. # 28, ¶¶6; Dkt. # 29, ¶¶7–9; Dkt. # 30, ¶¶9–11; Dkt. # 31, ¶¶7–9; Dkt. # 32, ¶¶9–10; Dkt. # 34, ¶¶ 7–9; Dkt. # 35, ¶¶ 5, 7–8; Dkt. # 36, ¶¶ 7–8.

Most shops prioritized interviewing applicants who had worked in the interviewing shop or were previously assigned to the shop.  *See* Dkt. # 24, ¶4 (Shop 31 first interviewed candidates working in Shop 31); Dkt. # 26, ¶4a ("[m]y first priority was to select Shop 51 personnel for interviews"); Dkt. # 27, ¶¶ 5–6, 9 (three available Toolmaker Apprentices given to existing Shop 31 workers); Dkt. # 29, ¶6a (first priority for interviews was Shop 26 workers); Dkt. # 30, ¶5a (main priorities for pipefitting apprenticeship were Shop 99 workers and individuals previously "loaned" to Shop 99); Dkt. # 31, ¶6a (first priority for interviews was Shop 38 workers); Dkt. # 32, ¶5a ("I do not have any recollection of selecting any non-Shop 99 people for interview" for 2019 sheet metal mechanic apprenticeship); Dkt. # 34, ¶5 (first priority for electrician apprenticeship was internal Shop 99 workers); Dkt. # 35, ¶4a (first applicants considered for machinist apprenticeship were internal Shop 31 workers); Dkt. # 36, ¶¶5–6 (no non-shop 56 interviews because 24 pipefitting apprenticeship positions were filled among the 39 qualified Shop 56 applicants).  Plaintiff worked in Shop 75 throughout the 2019 apprenticeship application process.  Dkt. # 23, ¶¶2–3.

After internal applicants, most shops interviewed only applicants from outside shops who contacted the shop directly to show specific interest in the shop's Apprentice Program.  *See* Dkt. # 24, ¶4 (Shop 31 interviewed candidates who came to a Shop 31 job fair); Dkt. # 25, ¶9 (shop

leader's best recollection was that Plaintiff did not show interest in a Code 730 apprenticeship); Dkt. # 26, ¶4b (non-Shop 51 candidates interviewed only if they had specifically approached Shop 51 hiring official); Dkt. # 28, ¶7 (shop leader's best recollection was that Plaintiff did not show interest in electronics apprenticeships at Shops 52 and 67); Dkt. # 29, ¶6b (non-Shop 26 candidates interviewed only if they approached Shop 26 personally to show interest in welding apprenticeship); Dkt. # 30, ¶9 (shop leader's best recollection was that Plaintiff, who never worked or was "on loan" to Shop 99, never approached hiring official to show interest in becoming a pipefitter); Dkt. # 31, ¶6b (non-Shop 38 candidates interviewed only if they specifically approached Shop 38 hiring official); Dkt. # 34, ¶5b (non-Shop 99 individuals interviewed for electrician apprenticeship if they approached hiring official).

On August 5, 2019, the Shipyard informed Plaintiff that it had not selected him for an interview for any of the ten positions he applied to, without further explanation. Dkt. # 45, ¶16. The Shipyard hired a younger applicant for each open Apprentice Program position to which Plaintiff applied. Dkt. # 46-23, at 4–12. On September 12, 2019, Plaintiff filed a Formal Complaint of Discrimination with the Navy. Dkt. # 46-17.

Plaintiff sued Defendant under the Age Discrimination in Employment Act ("ADEA") for committing age discrimination by declining to select Plaintiff for the Shipyard's Apprentice Program. Dkt. # 1. Defendant seeks partial summary judgment as to the 2019 apprenticeship positions with respect to which it denied Plaintiff's applications without interviewing him.[4] Dkt. # 20, at 3.

---

[4]    Plaintiff also claims Defendant committed age discrimination when it interviewed Plaintiff for two additional Apprentice Program positions. Dkt. # 1, ¶5.11. The instant summary judgment motion does not concern these claims.

# III.

## ANALYSIS

A.    Motion to Seal

On May 14, 2021, the Court granted the parties' Stipulated Motion for Protective Order. Dkt. # 10.  The protective order provides that before filing confidential material, the filing party must confer with the designating party.  *Id.*, ¶4.3.  And "[d]uring the meet and confer process, the designating party must identify the basis for sealing the specific confidential information at issue, and the filing party shall include this basis in its motion to seal, along with any objection to sealing the information at issue."  *Id.*

Pursuant to the protective order, Plaintiff moves to seal documents that Defendant has designated as "Confidential": Exhibit 1 to the Declaration of Plaintiff, Dkt. #45-1; Exhibits 1, 3, and 4 to the Declaration of Cristy Caldwell, Dkts. ## 44-1, 44-3, 44-4; Exhibits J, Q, R, S, T, W, and Z to the Declaration of Nathaniel Flack, Dkts. ## 46-10, 46-17–20, 46-23, 46-26; and Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment, Dkt. # 43. Dkt. # 42.  The documents contain unredacted names and identifying information of third parties. Plaintiff's motion notes that the parties conferred on August 15, 2022, about this motion, and that Defendant requested that the unredacted documents at issue be filed under seal.  Defendant does not oppose the motion.

Because the public has a general right to scrutinize judicial records and documents, parties seeking to seal records must overcome "a strong presumption in favor of access" by identifying "compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure."  *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006).  Courts must then balance the interests of the party seeking to seal records and the public.  *Id.* at 1179.  If a court chooses to seal records, "it

1
2
3
4
5
6
7

must base its decision on a compelling reason and articulate the factual basis for its ruling." *Id.*
Courts may seal records containing identifying information of third parties to protect their
privacy interests. *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1137 (9th Cir.
2003); *see also* Opperman v. Path, Inc., No. 13-CV-00453-JST, 2017 WL 1036652, at *4 (N.D.
Cal. Mar. 17, 2017). Plaintiff seeks to seal certain documents that identify by name third parties.
The privacy interests of third parties constitute compelling reasons to seal all the requested
unredacted records in their entirety, leaving redacted versions for the public.

8

B.      Summary Judgment Standard

9
10
11
12
13
14
15

        Summary judgment is proper only if the evidence, when viewed in the light most
favorable to the non-moving party, shows "that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also*
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658
(9th Cir. 2007). The moving party is entitled to judgment as a matter of law when the
nonmoving party fails to make an adequate showing on an essential element of a claim in the
case on which the nonmoving party has the burden of proof. *Celotex Corp.*, 477 U.S. at 323.

16
17
18
19
20
21
22

        A fact is "material" if it might affect the case's outcome. *Anderson v. Liberty Lobby,*
*Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence is such that
reasonable persons could disagree about whether the facts claimed by the moving party are true.
*Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983). "Uncorroborated allegations and
'self-serving testimony' will not create a genuine issue of material fact." *Heko Servs., Inc. v.*
*ChemTrack Alaska, Inc.*, 418 F. Supp. 3d 656, 660 (W.D. Wash. 2019) (quoting *Villiarimo v.*
*Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)).

23
24

        The moving party bears the initial burden of showing that there is no genuine issue of
material fact and that they are entitled to prevail as a matter of law. *Celotex Corp.*, 477 U.S. at

1   323.  If the moving party meets its burden, then the non-moving party "must make a showing

2   sufficient to establish a genuine dispute of material fact regarding the existence of the essential

3   elements of [their] case that [they] must prove at trial." *Galen*, 477 F.3d at 658.  Courts must

4   "view the facts and draw reasonable inferences in the light most favorable to the [non-moving]

5   party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

6          The Ninth Circuit "has set a high standard for the granting of summary judgment in

7   employment discrimination cases." *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th

8   Cir. 1996).  Courts should "emphasize[] the importance of zealously guarding an employee's

9   right to a full trial, since discrimination claims are frequently difficult to prove without a full

10  airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest*

11  *v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004).  This means an employee need produce

12  "very little evidence" to survive summary judgment. *Schnidrig*, 80 F.3d at 1410 (quoting *Lam v.*

13  *University of Hawaii*, 40 F.3d 1551, 1563 (9th Cir. 1994)).

14  C.     Age Discrimination Claim

15         The ADEA prohibits employers from discriminating "because of [an] individual's age."

16  29 U.S.C. § 623(a)(1).  The ADEA protects applicants for federal employment and federal

17  employees over 40 years old. *Id.* §§ 633a(a), 631(a).  To prove age discrimination under the

18  ADEA based on disparate treatment, Plaintiff must introduce evidence sufficient for a reasonable

19  jury to conclude that it was more likely than not that the Shipyard's actions were motivated by

20  his age. *Maxfield v. Brigham Young Univ.–Idaho*, 27 F. Supp. 3d 1077, 1086 (D. Idaho 2014).

21         For summary judgment motions on ADEA claims, the Ninth Circuit applies the burden-

22  shifting evidentiary framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04

23  (1973). *Shelley v. Green*, 666 F.3d 599, 607 (9th Cir. 2012).  Under this framework, the plaintiff

24  carries the initial burden to establish a prima facie case creating an inference of discrimination.

*McDonnell Douglas*, 411 U.S. at 802.  If the plaintiff establishes a prima facie case, an inference of discrimination follows and the burden of production shifts to the employer to produce a legitimate, nondiscriminatory reason for the adverse employment action.  *Id.*; *Shelley*, 666 F.3d at 607–08.  If the employer meets this burden, the plaintiff "must then raise a triable issue of material fact as to whether the defendant's proffered reasons for their terminations are mere pretext for unlawful discrimination." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010).  While the evidentiary burden shifts between the plaintiff and the employer under the *McDonnell Douglas* framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

Moving for partial summary judgment on the age discrimination claim, Defendant contends that the Shipyard could not have intentionally discriminated against Plaintiff based on his age because the individual hiring officials never knew his age.

1.    Prima facie case

Plaintiff can establish a prima facie case of age discrimination in violation of the ADEA by producing evidence that he was: (1) at least forty years old; (2) qualified for the position; (3) denied the position; and (4) the position was filled by a substantially younger applicant.  *Shelley*, 666 F.3d at 607–08.

Plaintiff satisfies each element of his prima facie case.  In 2019, Plaintiff was over 40 years old when he applied for the Apprentice Program positions. Dkt. # 45, ¶3.  Plaintiff was qualified for the positions for which he applied because hiring official Ames marked Plaintiff as "Qualified" on a spreadsheet forwarded to each shop's hiring decisionmakers.  Dkt. # 22, ¶¶ 14. Plaintiff was not selected for any Apprentice Program positions.  Dkt. # 45, ¶16.  And the Shipyard selected a younger applicant for each Apprentice Program position to which Plaintiff

applied.[5]  *See* Dkt. # 46-23 (providing a list including the birth year for all 2019 Apprentice

Program hires).  In fact, the average birth year for all 2019 apprenticeship positions for which

Plaintiff applied was 1992, *id.*; Plaintiff was born in 1954, Dkt. # 45, ¶3.

### 2.    Legitimate and nondiscriminatory explanation

The burden then shifts to the Shipyard to articulate legitimate, nondiscriminatory reasons

for not selecting Plaintiff.  *Shelley*, 666 F.3d at 609.  The Shipyard says that the hiring officials at

each shop could not have discriminated against Plaintiff based on his age because they did not

know his age.  Dkt. # 24, ¶¶6; Dkt. # 25, ¶¶ 5, 7–9; Dkt. # 26, ¶¶6–7; Dkt. # 27, ¶¶9–10; Dkt. #

28, ¶¶6; Dkt. # 29, ¶¶7–9; Dkt. # 30, ¶¶9–11; Dkt. # 31, ¶¶7–9; Dkt. # 32, ¶¶9–10; Dkt. # 34, ¶¶

7–9; Dkt. # 35, ¶¶ 5, 7–8; Dkt. # 36, ¶¶ 7–8.  Despite Plaintiff's high standardized test scores,

Defendant says that Plaintiff was not selected for an interview because most shop leaders

prioritized internal applicants working in their shop or applicants who previously expressed a

specific interest in their shop.  *See* Dkt. # 24, ¶4; Dkt. # 25, ¶9; Dkt. # 26, ¶4b; Dkt. # 28, ¶7;

Dkt. # 29, ¶6b; Dkt. # 30, ¶9; Dkt. # 31, ¶6b; Dkt. # 34, ¶5b.  Plaintiff neither worked in the

shops in which he applied nor expressed interest in the shops by approaching them directly or

attending job fairs in 2019.  *See* Dkt. # 23, ¶¶2–3; Dkt. # 21-1, at 13; Dkt. # 24, ¶4; Dkt. # 25,

¶9; Dkt. # 26, ¶4b; Dkt. # 28, ¶7; Dkt. # 29, ¶6b; Dkt. # 30, ¶9; Dkt. # 31, ¶6b; Dkt. # 34, ¶5b.

Defendant has provided a facially legitimate and nondiscriminatory explanation.

### 3.    Pretext

A plaintiff making an ADEA claim cannot defeat summary judgment when their prima

facie case is no more than the minimum required to create an inference of discrimination under

the *McDonnell Douglas* framework.  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir.

---

[5]      Defendant does not dispute that each such applicant was substantially younger.

1   1994).  "In response to the defendant's offer of nondiscriminatory reasons, the plaintiff must

2   produce 'specific, substantial evidence of pretext.'" *Id.* (quoting *Steckl v. Motorola, Inc.*, 703

3   F.2d 392, 393 (9th Cir. 1983).

4         A plaintiff without direct evidence that unlawful discrimination motivated an employer

5   can prove pretext indirectly, "by showing that the employer's proffered explanation is 'unworthy

6   of credence' because it is internally inconsistent or otherwise not believable*." Chuang v. Univ.*

7   *of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000) (quoting *Godwin v.*

8   *Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998)).  And "[e]vidence of a plaintiff's

9   superior qualifications, standing alone, may be sufficient to prove pretext." *Shelley*, 666 F.3d at

10  610.  Here, Plaintiff fails to present sufficient evidence of pretext.

11        Plaintiff offers no direct evidence of age discrimination but advances two main

12  arguments about why Defendant's explanations for its administration of the 2019 Apprentice

13  Program are pretext for unlawful discrimination.

14        First, Plaintiff contends that it is internally inconsistent to require applicants to first

15  submit résumés but not have Shipyard decisionmakers routinely review résumés.  Plaintiff

16  asserts that, as a result, he is entitled to the inference that shop-level decisionmakers reviewed his

17  résumé and appreciated that Plaintiff's experience and education reflected an applicant over the

18  age of 40.  But the Shipyard used résumés to determine an applicant's baseline eligibility for an

19  apprenticeship; résumés were not consulted at every step of the application cycle.

20  Dkt. # 22, ¶¶ 7–10, 13.  As noted above, applicants submitted résumés and test scores via

21  USAJobs.gov.  *Id.*, ¶7.  OCHR used these applications to produce a list of applicants who met

22  threshold eligibility requirements—the Certificate of Eligibles.  *Id.*, ¶¶ 5, 10.  Ames used the

23  Certificate of Eligibles to create a spreadsheet with "Qualified" applicants.  *Id.*, ¶ 10.  Ames did

24

not review applicant résumés.  *Id.*  Ames forwarded the spreadsheet to shop-level decisionmakers, who then selected applicants for interview without consulting résumés.  *Id.*, ¶13.

Plaintiff says that the Court should infer that the shop-level decisionmakers knew Plaintiff's age because the Shipyard maintained his age information in its personnel files.  But no evidence suggests that any shop-level decisionmaker had access to his personnel file.

Second, Plaintiff contends that his standardized test scores and his work experience reveal his superior qualifications for the Apprentice Program positions, thereby proving pretext.  Plaintiff scored 284 points in reading, 271 points in writing, and 300 points in math.  Dkt. # 45, ¶13.  Upon calculating the average scores for Apprentice Program selectees to which Plaintiff applied, the selectees averaged 276 points in reading, 271 points in writing, and 284 points in math.  Dkt. # 44-2.  Plaintiff highlights the testimony of shop-level decisionmakers James Jones, Seth Frazier, Scott McKee, and Lisa Kruzan to argue that these shops prioritized high math scores and should have interviewed Plaintiff, who had a perfect math score of 300.  Plaintiff also points to the testimony of his supervisor as to Plaintiff's positive performance ratings and achievement awards at the Shipyard.

Jones prioritized candidates with high math scores after internal candidates, and Plaintiff was among many apprenticeship candidates with a nearly perfect or perfect score.  Dkt. # 22-1.  Frazier testified that math scores were only used as a "tie breaker" between two equal candidates.  Dkt. # 46-11, at 14.  McKee used math scores merely to remove from consideration candidates with low scores.  Dkt. # 46-12, at 2.  Kruzan stated that her priority was qualified internal candidates and candidates who were "loaned" to her shop previously.  Dkt. # 30, ¶5b.  Plaintiff does not claim he ever worked in Kruzan's shop.  Only after considering those applicants,

1   Kruzan "also might" review the provided spreadsheet for external candidates with high scores.

2   *Id.*, ¶5a.

3          While Plaintiff asserts that his standardized test scores and positive performance ratings

4   entitled him to an interview, the Shipyard's shop decisionmakers prioritized other considerations

5   when deciding whom to interview: internal candidates and those external applicants who

6   expressed an interest in the shop's apprenticeship.  Because shop decisionmakers had different

7   priorities, Plaintiff did not have "superior qualifications" that could prove pretext.  *See Shelley*,

8   666 F.3d at 610.

9          Finally, Plaintiff cannot prove that Defendant's reasons for failing to interview him were

10  pretext for intentional discrimination based on age when no evidence shows the shop-level

11  decisionmakers knew Plaintiff's age.  *See, e.g., Wong v. Wells Fargo Bank, N.A.*, No. 20-CV-

12  00249-YGR, 2021 WL 4243398, at *7 (N.D. Cal. Sept. 17, 2021) (granting summary judgment

13  against ADEA plaintiff because "plaintiff has not raised a genuine issue of material fact as to

14  whether the recruiter knew his age"); *Caldwell v. Boeing Co.*, No. C17-1741JLR, 2019 WL

15  1556246, at *89 (W.D. Wash. Apr. 10, 2019) (finding plaintiff could not establish pretext for

16  race discrimination because decisionmakers were unaware of plaintiff's race); *Robinson v.*

17  *Adams*, 847 F.2d 1315, 1316 (9th Cir. 1987) (affirming summary judgment against plaintiff

18  raising race discrimination claims because there was "no showing by direct or indirect evidence

19  that the decision-maker knew" plaintiff was Black); *Raytheon Co. v. Hernandez*, 540 U.S. 44,

20  54, n. 7 (2003) ("If [the employer] were truly unaware that . . . a disability existed, it would be

21  impossible for her hiring decision to have been based, even in party, on [the employee's]

22  disability.").

23         Neal Schroeder, the Shop 31 leader, requested résumés for all applicants marked

24  "Qualified" on the spreadsheet to see if applicants had a specific maintenance-oriented

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING
PLAINTIFF'S MOTION TO PROVISIONALLY SEAL - 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

background.  Dkt. # 24, ¶4.  He sought individuals with state electrician licenses, experience in HVAC or refrigeration, or experience in computerized numerical control maintenance.  *Id.*  After reviewing résumés, Schroeder selected for interview Shop 31 workers, applicants who expressed interest in a Shop 31 apprenticeship or attended a Shop 31 job fair, and applicants whose résumés included the desired maintenance-oriented background.  *Id.*  Plaintiff does not claim he had these qualifications, worked in Shop 31, or expressed interest in a Shop 31 apprenticeship. Although Schroeder reviewed Plaintiff's résumé, there is no evidence that Schroeder declined to interview Plaintiff because of his age.

The evidence, even viewed in light most favorable to Plaintiff, does not support a reasonable inference that the individual shop-level decisionmakers knew Plaintiff's age.

B.    Spoliation of Evidence

Plaintiff alleges that shop-level decisionmakers destroyed evidence of contemporaneous notes and candidate résumés in violation of the Navy's records retention policy.  Plaintiff asks the Court to infer that Defendant destroyed records of its 2019 apprenticeship hiring process to conceal evidence of age discrimination.

For the Court to infer the Navy spoliated evidence of age discrimination, Plaintiff must show that: (1) the Navy had an obligation to preserve the evidence when it was destroyed; (2) the records were destroyed "with a culpable state of mind"; and (3) the evidence was "relevant" to Plaintiff's claim or defense.  *See Surowiec v. Cap. Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011) (quoting *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009)).

Plaintiff does not satisfy the second or third element.  Plaintiff offers no evidence that any shop decisionmaker acted with a "culpable state of mind" when discarding selection-related notes.  For example, he offers no evidence that any such person knew of his formal complaint

when discarding the notes.  Plaintiff asserts the records were relevant to his claim because the shop leaders perhaps memorialized their conscious or unconscious bias about a candidate's age. As discussed above, there is neither evidence that shop leaders knew Plaintiff's age nor evidence from which to infer they knew his age.

## IV.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Partial Summary Judgment.  Dkt. # 20.  And the Court GRANTS Plaintiff's Motion to Provisionally Seal.  Dkt. # 42.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 30th day of August, 2022.

John H. Chun
United States District Judge